IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD A. ROYBAL,

      Plaintiff,

v.                                                                                                  CV 17-1045 JHR

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Richard Roybal's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum [Doc. 21], filed April 13, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including the entry of final judgment. [Docs. 5, 10, 12]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"),[1] the Court grants Mr. Roybal's Motion and remands this case for further administrative fact finding.

**I)**       **INTRODUCTION**

To be considered disabled and eligible for benefits under the Social Security Act, a claimant must demonstrate that he is unable to return to his past work. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If he does so, the burden shifts to the Administration to prove that he can still perform work that exists in "significant numbers" in the national economy. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). To meet this burden, the Administration

---

[1] Documents 16 and 16-1 through 16-42 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than CM/ECF document and page number.

must prove the existence of jobs that the claimant can do despite his impairments and establish that those jobs exist in "significant numbers." *See Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005) (unpublished). Failure to prove both renders the Administration's denial of benefits unsupported by substantial evidence.

The Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[.]'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Instead, the *Trimiar* court set forth "several factors [that] go into the proper evaluation of significant numbers." *Id.* In the absence of a discussion of these factors, the Court should not supply the missing factual finding – that the number of jobs identified by the administration is "significant" in a particular case. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). That said, the Tenth Circuit has applied the principle of harmless error to affirm the failure of the Administration to assess the *Trimiar* factors in cases involving as few as 152,000 jobs. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished). Unfortunately for the Administration, the number of jobs identified by the Administrative Law Judge in this case (42,724) is significantly lower than 152,000.

This is not the first time this Court has been faced with a "relatively small" number of jobs. *See Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018) (6,400 jobs); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018) (5,200 jobs). As such, the Court finds itself bound by the principles of both horizontal and vertical stare decisis, insofar as it must follow the Tenth Circuit's legal holdings and its own application of those holdings. *See* Black's Law Dictionary, 710 (Fourth Pocket Ed. 2011). "Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles,

fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Janus v. Am. Fed'n of State, County, & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2478 (2018) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). Accordingly, for the reasons stated in *Crockett* and *Brandenburg*, reiterated and applied to this case below, the Court will grant Mr. Roybal's Motion to remand his case to the Administration for further fact finding.

II)     BACKGROUND

Mr. Roybal filed an application with the Social Security Administration for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on May 6, 2014. *AR* at 202-205. As grounds, Mr. Roybal alleged "Titanium Rob (sic) in Left leg, Left shoulder, rotator cuff injury, PTSD, Anxiety, Depression, Short Term Memory loss, Traumatice (sic) Brain Injury, Type II Diabetes, High Blood Pressure, Lower and Upper back pain, 2-4 mild strokes." *AR* at 57-58. Mr. Roybal alleged that his conditions became severe enough to keep him from working on March 1, 2011. *AR* at 211. The Administration denied Mr. Roybal's claim initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ"). *AR* at 57-109.

ALJ Jennifer Fellabaum held a hearing on September 28, 2016. *AR* at 33-56. On November 16, 2016, the ALJ issued an unfavorable decision, finding that Mr. Roybal has not been under a disability from his alleged onset date through the date of her decision. *AR* at 14-31. In response, Mr. Roybal requested review of the ALJ's decision by the Appeals Council on December 6, 2016. *AR* at 10-13. After reviewing his case, the Appeals Council denied Mr. Roybal's request for review on September 8, 2017. *AR* at 1-9. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

3

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Roybal has not engaged in substantial gainful activity since February 13, 2014, the date of his "previous judicial determination." *AR* at 19. At Step Two, she determined that Mr. Roybal has the severe impairments of "degenerative disc disease of the lumbar and cervical spine; left leg tibia and fibula fracture with rods; diabetes; left ear hearing loss; depression and post-traumatic stress disorder[.]" *AR* at 20. At Step Three, the ALJ concluded that Mr. Roybal's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 20-22. With the minor exception of his severe impairments (Mr. Roybal contends the ALJ failed to include some at Step Two), Mr. Roybal does not challenge these findings on appeal. [*See* Doc. 21].

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

4

any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Roybal retains the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant: can occasionally lift/carry up to 50 pounds and frequently up to 25 pounds; can sit up to six hours in an eight-hour workday; can stand and/or walk up to six hours in an eight-hour workday; can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; can frequently reach, finger, handle and feel bilaterally with non-dominant upper extremity; can never climb ladders ropes or scaffolds; can never be exposed to unprotected heights, hazardous materials. And requires work environments no louder than a typical office environment. In addition, the claimant requires simple routine tasks and no fast-paced production work. The claimant can occasionally interact with co-workers, supervisors and the general public.

*AR* at 22.

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that Mr. Roybal cannot return to his past relevant work as a welder and hospital maintenance worker. *AR* at 25. However, the ALJ found that there are jobs that exist in "significant numbers" in the national economy that Mr. Roybal can perform despite his limitations. *AR* at 26. Specifically, the ALJ determined that Mr. Roybal retains the functional capacity to work as a hospital cleaner (42,724 jobs nationally), hospital tray worker (66,076 jobs nationally), and an industrial cleaner (12,604 jobs nationally), despite his impairments. *AR* at 26. Accordingly, the ALJ determined that Mr. Roybal is not disabled as defined in the Social Security Act and denied benefits. *AR* at 26-27.

### III) LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Importantly, the Court cannot "presume to interpose [its] judgment for that of the ALJ." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

### IV) ANALYSIS

In addition to the issue of whether the number of jobs at issue in this case were "significant," Mr. Roybal raises a number of issues related to the ALJ's RFC finding. [*See generally* Doc. 21]. Because the Court agrees that the ALJ erred by failing to make a factual finding of whether or not the jobs at issue were "significant" in his case, it will not address Mr. Roybal's other claims of error, "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant v. Commissioner, SSA*, No. 18-4040, 2018 WL 6133387, at *5 (10th Cir. Nov. 23, 2018) (citing *Watkins* for this proposition).

Relying on the VE's testimony, the ALJ identified three jobs that Mr. Roybal allegedly retains the capacity to perform. The Commissioner concedes that the industrial cleaner job (representing 12,604 positions in the national economy) is inconsistent with Mr. Roybal's RFC. [*See* Doc. 23, p. 12]. Mr. Roybal also argues that the position of hospital tray worker (representing 66,076 positions in the national economy) is inconsistent with his RFC because it requires a reasoning level of 3. [*See* Doc. 21 pp. 16-17]. The Commissioner does not concede this point.

[Doc. 23, p.14]. However, the Court finds that the hospital tray worker position should not be considered, for several reasons.

First, the VE, and ALJ, incorrectly identified the job's Dictionary of Occupational Titles ("DOT") number. As Mr. Roybal points out, the number identified by the VE, 319.667-014, *AR* at 54, does not exist in the DOT. Rather, the VE appears to have been referring to the position listed at 319.6**7**7-014 (Tray Worker). Second, as Mr. Roybal posits, the "Tray Worker" position has a reasoning level of 3, requiring the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT 319.677-014, 1991 WL 672771. Mr. Royal argues that a reasoning level of 3 is inconsistent with his RFC, which limits him to simple and routine work tasks. [Doc. 21, p. 17 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). The Court agrees that *Hackett* is dispositive, as there the Tenth Circuit held that a restriction to simple and routine work tasks is inconsistent with level three reasoning. *Hackett*, 395 F.3d at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997)). As such, the only remaining job is that of hospital cleaner, with 42,724 positions in the national economy. The question is whether the ALJ's factual findings as to these 42,724 jobs withstand scrutiny on substantial evidence review.

> The pertinent statutes define disability as follows:
>
> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" *means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.*

*See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (emphasis added). The pertinent regulations echo the statutory language. *See* 20 C.F.R. §§ 404.1566(a), 416.966(a).[3] As such, the Tenth Circuit has held that "the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009); *see Knott v. Califano*, 559 F.2d 279, 282 (5th Cir. 1977) ("[T]he relevant job area is not confined to the claimant's locality."). In fact, the pertinent regulations and case law state "[w]e will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of … (2) Lack of work in your local area[.]" 20 C.F.R. §§ 404.1566(c), 416.966(c); *Raymond*, 621 F.3d at 1274 ("[T]he Commissioner is not required to show that job opportunities exist within the local area.") (quoting *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)).

> However, it must be remembered that these same regulations state:
>
> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. *Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.* If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added). As such, while the ALJ was not required to show that there were a significant number of jobs in Mr. Roybal's region, she was required to

---

[3] Stating: "We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether— (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work."

show that the national jobs she identified were not isolated as a matter of fact. In other words, the ALJ was required to determine whether or not 42,724 jobs is a significant number as applied to "several regions of the country." *See Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 528 (9th Cir. 2014) (assessing the "nationwide figure in the context of 'several regions of the country.'") (citing *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012)); *see Beltran*, 700 F.3d at 390 ("Although 1,680 jobs might seem a 'significant number' standing alone, distributing these jobs between several regions across the nation shows that it is not 'significant' after all.").

As stated above, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[.]'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). While the court has suggested that "the number appears to be somewhere between 100 . . . and 152,000[,]" *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016), it has made clear that "each case should be evaluated on its individual merits," *Trimiar*, 966 F.2d at 1330, unless harmless error applies. *See Evans*, 640 F. App'x at 736. In *Trimiar*, the Tenth Circuit adopted several factors that an ALJ "should consider . . . in determining whether work exists in significant numbers." *Id.* These factors include: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)). "The decision should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

As the Sixth Circuit has said, "[d]isability insurance . . . is not available to fund a claimant's decision to live far from his job." *Taskila v. Commissioner of Social Security*, 819 F. 3d 902, 905 (6th Cir. 2016) (quoting *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)). However, an ALJ

9

must consider the "intrinsic" effects of a claimant's impairments when determining whether a certain number of jobs is "significant," "because they prevent the claimant from *accessing* certain jobs in the local or national economy." *Taskila*, 819 F.3d at 906. "That an ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs 'should consider many criteria in determining whether work exists in significant numbers.'" *Id.* (quoting *Hall v. Bowen*, 837 F.2d at 275).

The factors borrowed from the Sixth Circuit in *Trimiar* do not apply when the number of available jobs is "much larger" than the 650 to 900 regional jobs at issue there. *See Raymond*, 621 F.3d at 1274 n.2; *see also Harmon*, 168 F.3d at 292 ("Certainly 700,000 jobs, with no indication of gross concentration in a few areas, is a 'significant number of jobs in the national economy."); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing the principles of harmless error and stating that "[s]uch an approach might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater."). However, the Tenth Circuit, like the Sixth Circuit, has never drawn a line delineating how much "much larger" is. *Taskila*, 819 F.3d at 906.

The Commissioner points to the unpublished case of *Rogers v. Astrue*, 312 F. App'x 138, 141 (10th Cir. 2009), as an example where the Tenth Circuit affirmed 11,000 national jobs as being "significant." [*See* Doc. 22, p. 23]. The Court is not convinced by this citation for two reasons. First, the claimant in *Rogers* did not argue that 11,000 was not a significant number. Thus, the Tenth Circuit's decision did not address the issue. Second, the only Tenth Circuit case the Court is aware of to have addressed *Rogers*, *Evans v. Colvin*, does not rely upon it to establish the minimum number of jobs to be enough for harmless error. *See Evans*, 640 F. App'x at 736 ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say,

10

as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes* ) to be sufficient so far for application of harmless error."). Put another way, the Commissioner has given this Court no reason to rely on *Rogers* when the Tenth Circuit was unwilling to do so.

The Commissioner's best argument relies on a thoughtful decision of this Court, the honorable Karen Molzen presiding. [*See* Doc. 23, p. 15 (citing *King v. Berryhill*, CV 16-1147 KBM, 2018 WL 851358, at *12-14 (D.N.M. Feb. 12, 2018))]. In *King*, Judge Molzen found 47,500 jobs to be nationally significant, and applied harmless error to affirm the ALJ's conclusion that the claimant was not disabled. *King*, 2018 WL 851358, at *13. In doing so, however, Judge Molzen determined that the *Trimiar* factors do not apply to cases involving national numbers. *See id.* ("Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues."). This Court cannot agree with this conclusion, for one very important reason: the Sixth Circuit, from which the *Trimiar* factors were borrowed, does not draw such a distinction. *See Taskila*, 819 F.3d at 904 (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988); *see id.* at 905 ("While the frame of reference has changed, the standard of review has not. The current inquiry—focused on nationwide jobs, not just jobs in the claimant's locale—is no less claimant-specific than the one Judge Friendly adopted."). Rather, "[a]n ALJ must consider these 'intrinsic' effects because they [may] prevent the claimant from accessing certain jobs in the local *or national* economy." *Taskila*, 819 F.3d at 906. In other words, the Sixth Circuit applies the *Trimiar* factors (borrowed from *Hall*), despite the law's current focus on jobs in the national economy.

Thus, Judge Molzen's decision, while thoughtful, is neither binding on nor persuasive to this Court. The significant numbers inquiry is a fact question reviewed for substantial evidence, not a legal question to be reviewed as a matter of statutory interpretation. *Taskila*, 819 F.3d at 905. Thus, "[t]he Tenth Circuit has emphasized that 'the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation' and, as such, 'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Padilla v. Berryhill*, CV 16-0106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)). Therefore, unless the number of jobs in a case reaches levels affirmed by the Tenth Circuit as significant as a matter of law, the Court declines to apply harmless error in the absence of a proper *Trimiar* analysis.

Ultimately, as in *Crockett* and *Brandenburg*, the Court is hesitant to find that 42,724 national jobs are "significant" as a matter of law. *See* CV 17-0955 JHR, Doc. 25, pp. 9-10; CV 17-0507 JB/JHR, Doc. 27, p. 8. In those cases, the Court held that the ALJ was required to engage in a *Trimiar* analysis to determine whether the number of jobs there (6,400 and 5,200 nationally) were significant as a matter of fact. *See id.* (citing *Taskila*, 819 F.3d at 905, for the proposition that it is "impossible to determine the number of jobs that is 'significant' enough—without taking into account [the claimant's] individual circumstances."). While the Court recognizes that the number of jobs here is larger than those at issue in *Crockett* and *Brandenburg*, as the Tenth Circuit stated, "each case should be evaluated on its individual merits." *Trimiar*, 966 F.2d at 1330.

The ALJ failed to engage in a discussion of the *Trimiar* factors in this case, *see AR* at 26, and the Commissioner does not argue otherwise. [*See generally* Doc. 22, pp. 22-23]. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings

regarding the numerical significance requirement, [the Court] cannot properly review this issue." *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished). As the Tenth Circuit has stated:

> *Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and … we are not in a position to draw factual conclusions on behalf of the ALJ.

*Allen*, 357 F.3d at 1144 (quotations omitted). Absent the proper analysis by the ALJ, this Court cannot confidently say that 42,724 jobs, spread across several regions of the country, are significant as a matter of fact, and the Court declines the Commissioner's invitation to find them significant as a matter of law.

## V) CONCLUSION

Until the Administration or a higher court draws a definitive line establishing the number of national jobs that is "significant" as a matter of law, Administrative Law Judges in this circuit must adhere to the principles set forth in *Trimiar* and engage in the factoral analysis it sets forth when the number of national jobs at issue is significantly lower than 152,000. Because the ALJ did not comply with *Trimiar* here, the Court must reverse and remand this case for further proceedings.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Richard Roybal's Motion to Reverse and Remand to Angency for Rehearing, with Supporting Memorandum [Doc. 21] is GRANTED and the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent